IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                        |     |                        |
| -------------------------------------- | --- | ---------------------- |
|                                        | *   |                        |
| UNITED STATES OF AMERICA,              | *   |                        |
|     Plaintiff      | *   |                        |
|     v.             | *   | CIVIL NO. JKB-21-0676  |
| STEPHEN R. KONCURAT, *et al.*,         | *   |                        |
|     Defendants.    | *   |                        |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

The United States of America (the "United States" or the "Government") brought this action seeking a judgment against Stephen R. Koncurat and Tamara K. Koncurat (collectively the "Koncurats") for unpaid federal income tax liabilities associated with tax years 2005, 2006, and 2010 through 2016. (ECF No. 1.) Presently pending before the Court is the Government's Motion for Summary Judgment. (ECF No. 23.) The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue granting the Government's Motion for Summary Judgment.

### I.   Factual Background and Procedural History

The Koncurats were married in 1990 and have filed joint federal income tax returns throughout their marriage. (Tamara Koncurat Depo. at 14, 17, Reply Mot. Summ. J. Ex. 2, ECF No. 25-5.) During the tax years at issue, Stephen Koncurat worked in the insurance sales industry, mainly for his own small business, U.S. Health Advisors, where he remains employed today. (Stephen Koncurat Depo. at 14–16, Reply Mot. Summ. J. Ex. 1, ECF No. 25-4.) Tamara Koncurat was the primary caretaker of the couple's home and four children during those years and has not

worked since at least 2005. (Tamara Koncurat Depo. at 14, 55.) Stephen Koncurat has generally managed the Koncurat family's budget and assets, and he has been responsible for ensuring that his and Tamara's joint federal income tax returns are prepared and filed. (*Id.* at 15.) Tamara Koncurat claims that she relied completely on her husband to fulfill the couple's tax obligations and "trusted that it was taken care of." (*Id.* at 15–16.)

In support of its Motion for Summary Judgment, the Government submitted for each tax year at issue both a certified Account Transcript and a "Certificate of Assessments, Payments and Other Specified Matters" (a "Certificate of Assessments" or "Certificate"), also known as a Form 4340, all prepared by the United States Internal Revenue Service ("IRS").[1] (Mot. Summ. J. Ex. A–R, ECF No. 23-4–23-21.) These IRS records indicate that, for all tax years at issue (i.e., 2005, 2006, and 2010 through 2016), the Koncurats failed to pay the full balance of taxes due on filing. (Decl. of Revenue Officer Christina Beyer ¶¶ 7–8, Mot. Summ. J. Ex. 2, ECF No. 23-3.) The records further show that, for tax years 2005, 2006, and 2014, the Koncurats filed their joint federal income tax returns late. (*Id.*) The records for the nine tax years at issue reflect that, as of November 1, 2021, the Koncurats owed the Government a combined total of $669,151.03 in outstanding tax liabilities, interest, and penalties for late filing and late payment. (Mot. Summ. J. Mem. Supp. ¶ 6, ECF No. 23-1.) Because these liabilities continue to accrue interest and penalties until they are paid in full, the balance owed by the Koncurats today may be larger. (*Id.* at ¶ 7); 26 U.S.C.A. § 6601(a); 26 U.S.C.A. § 6651(a).

Stephen Koncurat asserts that several financial and personal "circumstances largely beyond [his] control" have prevented the Koncurats from meeting their federal tax obligations. (Stephen

---

[1] Account Transcripts itemize all transactions related to Taxpayers' annual tax accounts. (Decl. of Revenue Officer Christina Beyer ¶ 5, Mot. Summ. J. Ex. 2, ECF No. 23-3.) Certificates of Assessments provide an itemized breakdown of Taxpayers' federal income tax liabilities, including any accrued interest and penalties. *U.S. v. Sarubin*, 507 F.3d 811, 813 (2007).

Koncurat Depo. at 46.)  Between 2010 and 2011, Stephen Koncurat's income decreased sharply, from $462,455 to $95,974. (Opp'n to Mot. Summ. J. Mem. Supp. ¶ 9(a), ECF No. 24-1.)  He lost approximately six rental properties in Baltimore to foreclosure in or around 2007 or 2008.  (*Id.* at ¶ 9(b).)  For an unspecified period of time the Koncurats "could not afford" to make mortgage payments on their home, and Stephen Koncurat's father made the payments for them.  (*Id.* at ¶ 9(c).)  In or around 2014 or 2015, Stephen Koncurat broke his back; in 2018, after being diagnosed with both cancer and a blocked artery, he underwent three major surgeries and attended approximately one hundred medical appointments.  (*Id.* at ¶ 10(a)–(d).)  Stephen Koncurat admits that he "worked in between" these major health events. (Stephen Koncurat Depo. at 26.)  IRS Account Transcripts for the tax years at issue indicate that the Koncurats reported an Adjusted Gross Income of $274,359 in 2005, $251,902 in 2006, $462,455 in 2010, $95,974 in 2011, $71,847 in 2012, $109,072 in 2013, $171,468 in 2014, $207,398 in 2015, and $314,491 in 2016.  (Mot. Summ. J. Ex. A–I, ECF No. 23-4–23-12.)  Stephen Koncurat earned more than one million dollars in income in 2019, and again in 2021. (Stephen Koncurat Depo. at 43–44.)

The Koncurats assert that, for unspecified lengths of time in prior years, they have "been in installment agreements approved by the [IRS]" and that they have "generally remitted voluntary $1,500 payments each month since January 2020" toward their outstanding tax liabilities, but they acknowledge that they have yet to pay the full amount owed.  (Opp'n to Mot. Summ. J. Mem. Supp. ¶ 24, ECF No. 24-1; Answer ¶ 16, ECF No. 2.)

On March 17, 2021, after notifying the Koncurats of their outstanding assessments and demanding payment, the United States brought this action to reduce the Koncurats' federal income tax liabilities to an enforceable judgment.[2]  (Mot. Summ. J. Mem. Supp. ¶ 5, ECF No. 23-1.)  At

---

[2] The record is unclear as to the extent of the Government's collection efforts against the Koncurats since 2005, as well as the extent of the Koncurats' repayment efforts in that time.

the close of discovery, the United States moved for summary judgment against the Koncurats for the full amount of their unpaid tax liabilities with interest and penalties, which totaled $669,151.03 as of November 1, 2021, as well as all subsequently-accrued interest and penalties. (Mot. Summ. J. Mem. Supp., ECF No. 23-1.)

The Koncurats do not dispute the IRS's calculation of the underlying tax liabilities, interest, and penalties assessed against them, but they have raised two affirmative defenses in opposition to the Government's Motion.[3] (*See* Opp'n to Mot. Summ. J. Mem. Supp., ECF No. 24-1.) First, they argue that they are not liable for the penalties assessed against them because they had "reasonable cause" for their failure to timely file and pay their taxes. (*Id.*); *U.S. v. Boyle*, 469 U.S. 241, 245 (1985). Second, Tamara Koncurat argues that she should not be held personally liable for *any* of the couple's outstanding federal tax balance because she qualifies for "innocent spouse relief" under 26 U.S.C.A. § 1605(f). (Opp'n to Mot. Summ. J. Mem. Supp., ECF No. 24-1.)

## II.    Legal Standard

Federal Rule of Civil Procedure 56 provides that a party can move for summary judgment on a "claim or defense—or the part of [any] claim or defense," provided it shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment, unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to render a

---

[3] The Koncurats' memorandum in opposition to summary judgment lists as two separate issues the couple's defenses to late filing penalties and late payment penalties, but it later collapses the analysis of both into a single argument. (Opp'n to Mot. Summ. J. Mem. Supp. 5–7, ECF No. 24-1.) Accordingly, and because the legal standard to be applied is the same for each, the Court will discuss the two types of penalties together.

verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

## III.   Analysis

The Government contends that the Koncurats owe taxes, interest, and penalties. The Government is entitled to summary judgment with respect to the *amount* of taxes, interest, and penalties owed because the Koncurats have not rebutted the Government's prima facie case in support of the accuracy of its calculations. The Government is likewise entitled to summary judgment with respect to the validity of the penalties assessed against the Koncurats, as the Koncurats have failed to establish that they can avail themselves of a reasonable cause defense for filing and paying their taxes late. Finally, the Court is without jurisdiction to consider the Koncurats' argument that Tamara Koncurat qualifies for innocent spouse relief. Accordingly, the Court will grant the Government's Motion for Summary Judgment.

### A.   Presumption of Validity of IRS Assessments

As an initial matter, the Court must determine whether the United States has carried its burden of showing that no genuine dispute exists as to the amount of the Koncurats' outstanding federal tax liabilities, interest, and penalties. An IRS "assessment" is a "determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." *United States v. Fior D'Italia, Inc.*, 536 U.S. 242, 242 (2002). Assessments are made by IRS officials pursuant to the rules prescribed by federal tax statutes. *See Bull v. U.S.*, 295 U.S. 247, 259 (1935) ("Some machinery must be provided for applying the rule to the facts in each taxpayer's case[.] . . . The chosen instrumentality . . . is called an assessment.") As such, it has been "well established . . .

that an assessment is entitled to a legal presumption of correctness—a presumption that can help

the Government prove its case against a taxpayer in court." *Fior D'Italia*, 536 U.S. at 242.  In a

civil tax collection suit brought by the Government, this presumption of correctness applies, and

the taxpayer bears the burden of proving that an IRS assessment is incorrect. *U.S. v. Janis*, 428

U.S. 433, 440 (1976).  "Once a taxpayer has introduced evidence sufficient to support a finding

that the assessment is wrong," the presumption is overcome, and the Government must present

further evidence of the assessment's accuracy. *Higginbotham v. United States*, 556 F.2d 1173,

1176 (4th Cir. 1977).

    The Government "establish[es] a prima facie case in support of the tax liability charged . .

. when it introduce[s] into evidence the certified copies of the certificates of assessment[s]," as the

Government has submitted here. *United States v. Sarubin*, 507 F.3d 811, 816 (4th Cir. 2007)

(quoting *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980) (quotations omitted)); (*see*

Mot. Summ. J., Ex. J–R, ECF No. 23-13–23-21).  The Koncurats have made no effort to rebut the

Government's prima facie case by challenging the correctness of the Certificates of Assessments

submitted by the IRS for any of the tax years at issue. *See generally* Opp'n to Mot. Summ. J.

Mem. Supp., ECF No. 24-1.  They have argued only that they should not be assessed certain

penalties and that Tamara Koncurat is not personally liable for any outstanding federal tax balance.

    Accordingly, the Government's uncontested assessments of the Koncurats' federal income

tax liabilities, interest, and penalties are presumed correct.  Because there is no genuine dispute as

to the amount owed, the Government is entitled to summary judgment as to the full amount.

### B. Penalty Abatement for "Reasonable Cause"

    Although the Koncurats do not dispute the IRS's calculation of penalties assessed against

them for late filing and late payment, they contend that they should not be required to pay those

6

penalties at all because they qualify for a penalty abatement for "reasonable cause." (*See generally* Opp'n to Mot. Summ. J. Mem. Supp., ECF No. 24-1.) Because the Court finds that the Koncurats have not alleged facts that would support a finding of reasonable cause, this defense fails.

Section 6651(a) of the Internal Revenue Code imposes penalties on any taxpayer who fails to timely file a tax return or pay taxes owed. The statute prescribes set schedules of penalties for both types of failure. 26 U.S.C.A. § 6651(a)(1)–(2). Both provisions contain an exception to the mandatory imposition of these penalties if the taxpayer shows that "such failure is due to reasonable cause and not due to willful neglect[.]" *Id.* A "heavy burden" falls on the taxpayer to establish that they qualify for a reasonable cause abatement. *United States v. Boyle*, 469 U.S. 241, 245 (1985).

The Internal Revenue Code does not define "reasonable cause," but the applicable Treasury Regulation requires that the taxpayer demonstrate either that they exercised "ordinary business care and prudence" but nevertheless were "unable to file the return" or pay tax owed on time, or that they "would [have] suffer[ed] an undue hardship" if they had paid on time. 26 C.F.R. § 301.6651-1(c)(1). "Undue hardship," according to the Treasury Regulation, "means more than an inconvenience to the taxpayer." 26 C.F.R. § 1.6161-1(b). The IRS has articulated eight examples of reasons that, in its view, satisfy the "reasonable cause" standard. These include

> unavoidable postal delays, the taxpayer's timely filing of a return with the wrong IRS office, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence, destruction by casualty of the taxpayer's records or place of business, failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion, and the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return.

*Boyle*, 469 U.S. at 243 n.1 (citing Internal Revenue Manual § 4350, (24) ¶ 22.2(2) (Mar. 20, 1980)). The Supreme Court in *Boyle* found this list instructive to its conclusion that the "reasonable cause" exception is limited to a "very narrow range of situations," and this Court will be guided by it as well. *Id.* at 249–50. With respect to financial hardships, courts have held that "[e]vidence of financial trouble, without more, is not enough[ ]" to constitute reasonable cause. *Synergy Staffing, Inc. v. United States Internal Revenue Service*, 323 F.3d 1157, 1160 (9th Cir. 2003) (citing *Fran Corp. v. United States*, 164 F.3d 814, 816 (2d Cir. 1999)). "Willful neglect," by contrast, "may be read as meaning a conscious, intentional failure or reckless indifference." *Id.* at 245. The Internal Revenue Manual provides that reasonable cause "determinations must be based on the individual facts and circumstances of each case," but specifies that "[c]ontinued failure to file or pay (beyond the effect of the 'reasonable cause') may be evidence that the underlying reason for the failure to file or pay is willful neglect and not the 'reasonable cause' claimed by the taxpayer." Internal Revenue Manual § 20.1.2.2.4.1(2)(a), (c) (2016).

In support of their claim for a reasonable cause abatement, the Koncurats assert that "circumstances beyond their control" made them unable to timely file their returns and pay their taxes in the years at issue. (Opp'n to Mot. Summ. J. Mem. Supp. 6, ECF No. 24-1.) They point to "financial hardship, such as the fluctuating business conditions Mr. Koncurat experienced" around 2010, the foreclosure of several of their rental properties in Baltimore around 2007 or 2008, and the unspecified period during which Stephen Koncurat's father made the Koncurats' mortgage payments. (*Id.*) They also assert that Stephen Koncurat's significant medical challenges—including a broken back in 2014 or 2015 and diagnoses of cancer and a blocked artery in 2018—contributed to their inability to meet their tax obligations "even after exercising ordinary care and prudence." (*Id.*)

8

Even assuming that the Koncurats exercised reasonable business care and prudence,[4] their general allegations of financial and personal difficulties over the course of years do not amount to "reasonable cause" for their failures to file and pay taxes in the specific years at issue. They have alleged no details sufficient to support a finding that any of the hardships they experienced actually presented unavoidable obstacles of the sort enumerated by the IRS and recognized by the *Boyle* Court, either to their timely filing or payment in any given year or to their ability to settle their outstanding tax balance to date. (*See generally* Opp'n to Mot. Summ. J. Mem. Supp., ECF No. 24-1.)

Further, the Koncurats have not alleged, beyond general statements by Stephen Koncurat that they "didn't have [the money]" or "couldn't afford to keep [the installment plan] going" in any given year, that they suffered more than the kind of common "financial difficulties" that other courts have rejected as reasonable cause. (Stephen Koncurat Depo. at 35–36); *see Fran Corp.*, 164 F.3d at 819–20 (finding no reasonable cause where a company continued to pay rent and fund other business endeavors while delinquent on tax obligations), *ABL & Associates Plumbing, LLC v. United States*, Civ. No. 16-918-D, 2019 WL 2221588, at *5 (E.D.N.C. May 21, 2019) (finding no reasonable cause where company "fail[ed] to present evidence that its continued viability as a business would have been threatened had [it] paid its federal employment taxes"). While the family's financial troubles were significant at times, the record reflects that they have had consistent access to financial resources throughout the years at issue. For instance, they were paying "business expenses" for Stephen Koncurat's insurance company; contributing tuition,

---

[4] As the Government points out, there is evidence on the record that calls into question whether Stephen Koncurat exercised "ordinary business care and prudence," a necessary component of the "reasonable cause" defense. (Reply Mot. Summ. J. Mem. Supp. 7, ECF No. 25-1; *see* Stephen Koncurat Depo. at 21–22 ("I was using [the money] for business expenses and didn't realize how much was owed until it was finally filed. . . . I didn't have the money set aside for tax.")) However, because the Koncurats have failed to allege reasonable cause, the Court declines to address the issue of ordinary business care and prudence.

housing, and wedding expenses to children; and donating up to "ten percent" of income "after expenses" to charity each year. (Stephen Koncurat Depo. at 22, 52–53, 55.) Nor does the record indicate that the timely payment of their federal taxes would have been an "undue hardship" rather than an "inconvenience" to the Koncurats. 26 C.F.R. § 1.6161-1(b). Although the family's Adjusted Gross Income decreased from $462,455 in 2010 to $95,974 in 2011, Stephen Koncurat earned income in each of the tax years at issue despite employment changes, was able to "work[ ] in between" his medical challenges, and earned more than one million dollars in income in 2019 and 2021. (Stephen Koncurat Depo. at 26, 43–44; Mot. Summ. J. Ex. A–I, ECF No. 23-4–23-12.) Finally, the Koncurats have pointed only to hardships that occurred four or more years ago and, as evidenced by Stephen Koncurat's recent income, have since been resolved; when viewed as a whole, the record implicates the kind of "continued failure" that IRS guidance warns may evidence willful neglect. Internal Revenue Manual § 20.1.2.2.4.1(2)(c) (2016).

The Koncurats have failed to identify specific facts sufficient to place the issue of reasonable cause in genuine dispute, and, as such, they cannot avail themselves of the defense of reasonable cause with respect to the penalties assessed against them under 26 U.S.C. § 6651(a).

**C. Innocent Spouse Relief**

Finally, the Court turns to Tamara Koncurat's contention that she cannot be held liable for the tax liabilities, interest, and penalties at issue because she qualifies for "innocent spouse relief" under 26 U.S.C.A. § 6015(f).[5]   (Opp'n to Mot. Summ. J. Mem. Supp., ECF No. 24-1.)   This equitable safe harbor provision of the Internal Revenue Code is available to a taxpayer who filed

---

[5] The Government asserts that Tamara Koncurat should be barred from asserting this affirmative defense for the first time in Defendants' response to the Government's Motion for Summary Judgment. (Reply Mot. Summ. J. Mem. Supp. 9–10, ECF No. 25-1.)  Federal Rule of Civil Procedure 12(b) generally bars any defense not raised by the Defendant in her first responsive pleading.  However, because this Court lacks subject matter jurisdiction to hear the defense regardless of whether it was timely raised, it declines to address this issue.

jointly with a spouse and who can establish that "taking into account all the facts and circumstances, it is inequitable to hold [her] liable for any unpaid tax or deficiency." 26 U.S.C.A. § 1605(f)(1)(A). The statutory scheme prescribes a particular procedure for applying for innocent spouse relief. The taxpayer "must first seek relief [by filing a petition] with the Secretary of the IRS, and then may appeal to the Tax Court." *United States v. LeBeau*, 335 F. Supp. 3d 1206, 1211 (S.D. Cal. 2018) (citing 26 U.S.C. § 6015(e)(1)(A)). Should the taxpayer seek an appeal from the Tax Court's determination, the Court of Appeals has exclusive jurisdiction to review her claim. *Id.* (citing 26 U.S.C. § 7482(a)(1)).

In view of this statutorily mandated process, United States District Courts "have spoken with near unanimity" in disclaiming subject matter jurisdiction to decide claims of innocent spouse relief. *United States v. Stein*, Civ. No. 13-00743, 2015 WL 5943441, at *3 n.1 (W.D. Ky. Oct. 13, 2015); *see also Lebeau*, 335 F. Supp. 3d at 1211 ("the district court has no jurisdiction to decide an innocent spouse claim"), *United States v. Elman*, Civ. No. 10-6369, 2012 WL 6055782, at *4 (N.D. Ill. Dec. 6, 2012) ("[E]xclusive jurisdiction over [taxpayer's] innocent spouse defense under § 6015(f) lies with the Tax Court."). "Certainly no part of § 6015 confers jurisdiction to the federal district courts 'to determine innocent spouse claims in the first instance.'" *Stein*, 2015 WL 5943441, at *3 (quoting *United States v. Wallace*, No. 1:09-CV-87, 2010 WL 2302377, at *4 (S.D. Ohio Apr. 28, 2010)). At most, a taxpayer may be granted a stay in a tax collection proceeding like this one if her innocent spouse claim is pending according to proper statutory procedure. *LeBeau*, 335 F. Supp. 3d at 1214.

Because it lacks jurisdiction, this Court declines to address Tamara Koncurat's defense of innocent spouse relief. Accordingly, Tamara Koncurat cannot avoid personal liability at this stage by invoking innocent spouse relief.

**D. Conclusion**

For the foregoing reasons, a separate Order shall issue granting Plaintiff United States' Motion for Summary Judgment against Defendants Stephen R. Koncurat and Tamara K. Koncurat. (ECF No. 27). Within two weeks of the entry of the Order, the Government is instructed to submit to the Court an accounting of the total amount owed by the Koncurats as of the date of the Order. The Koncurats will have two weeks to respond to the Government's assessment of liability, after which the Government will have one week to submit any reply. The Court will determine the current amount owing and only then enter final judgment against the Koncurats.

DATED this _____ 6 _____ day of September, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

12